IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ARTHUR L. LLOYD | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-11-2188 |
| MR. YOUNGER et al. | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 25. Plaintiff has opposed the motion (ECF No. 27) and Defendants have filed a Reply (ECF No. 28). The matter is now ripe for review; a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

### Background

Plaintiff Arthur L. Lloyd ("Lloyd") alleges on April 21, 2011, he was told to wash the windows in a classroom located inside Maryland Correctional Institution at Jessup (MCIJ). ECF No. 1 at p. 4. He explains that the windows had bars in front of them on the inside and the only way they could be washed was from the outside which is an "out-of-bounds" area for inmates. *Id.* Lloyd states that to go into an out-of-bounds area risks an escape charge which would result in disciplinary measures including being sent to lock-up and perhaps losing an opportunity to be paroled. Lloyd claims he informed Mr. Younger, the principal of the school, of the issue with the outside of the windows being an out-of-bounds area, but Younger rebuffed Lloyd stating "if I had of told you to do that and you refused I would have fired you." *Id.* Lloyd further alleges that Younger told him, in a hostile voice, to get out of his office and go back to his cell. *Id.*

Lloyd returned to work at the school on the following Monday and Tuesday. Meanwhile Lloyd wrote an administrative remedy procedure complaint (ARP) regarding the orders to wash the windows. Lloyd claims that, in retaliation for writing the ARP, Younger fired him from his tutor job. Additionally, Lloyd claims that Ms. Tischer discriminated against him because he is African-American and 60 years old. Lloyd claims there were two white tutors in the same classroom and Tischer never asked them to wash the windows or empty the garbage as he was asked to do. Rather, the white tutors were simply asked to help with the students. ECF No. 1 at p. 4. Lloyd claims Ms. Tischer ordered him to empty the garbage in the middle of class and also told him to lift tables and chairs despite Lloyd informing her he had a hernia operation and was instructed not to lift such items. *Id.* at p. 5. Lloyd claims these requests continued through the months of March and April of 2011. *Id.*

Lloyd further claims that he was denied the opportunity to be interviewed by television news despite the fact that such interviews are permissible under Division of Correction rules. *Id.* He asserts that Sgt. Forham deliberately prevented two of his ARP requests from going forward in the grievance process because Forham did not want the Court to hear about issues raised by Lloyd regarding a 50-year old prison dormitory. Sgt. Forham prevented the claim from going forward by dismissing the ARPs for raising too many issues. Lloyd states he was never given any replacement ARP forms until the 30-day period for filing a claim had expired. *Id.* at pp. 5 – 6. Lloyd also alleges that Lt. Sheppard made false statements to him in order to get him to drop an ARP, promising to return Lloyd to the 50-year old dormitory, but instead Lloyd was sent to a 21-year old building for students. *Id.* at p. 6. Lloyd adds that the Maryland Department of

2

Corrections[1] does not provide MCIJ with a doctor for inmates on the weekends and, as a result, he did not receive follow up treatment after his hernia operation. He claims he had to suffer in pain without any medication from June 17 through 27, 2011, and that he was refused medical treatment Monday, June 20, 2011. *Id.*

In a document entitled "Supplemental Charges," Lloyd claims the Maryland Department of Corrections is not allowing him to have cataract surgery. ECF No. 5. He states he has a cataract in his right eye which has caused blindness in one eye since 2005. Lloyd concludes that the surgery was denied in retaliation for the filing of the instant case. *Id.*

Defendants Younger and Tischer state that Lloyd was assigned by MCIJ Case Management to the position of classroom aid or tutor in the classroom of Defendant Tischer. ECF No. 25 at Ex. 1. On April 21, 2011, Tischer was conducting testing in another classroom and left a note on the chalkboard for the tutors suggesting certain activities to fill their time since class was not going to be held that day. The tasks suggested to the tutors included cleaning the chalkboard and ledges, cleaning the counters and window ledges, cleaning out student folders, and working on the computer. *Id.* She states that she never asked any of the tutors to clean the windows as there is no way to clean the windows from inside. *Id.*, *see also* Ex. 2, Affidavit of Eric Grimes (stating he took on the task of washing the window ledges and nothing was ever said about washing the windows). Tischer also states she never asked Lloyd or other tutors to empty the trash. *Id.* at Ex. 1. Indeed, the activities written on the board for the tutors were simply options from which the tutors could choose in order to keep busy during their assigned work hours. *Id.* at Ex. 2.

---

[1] The only Defendants served in the case are Mr. Younger and Ms. Tischer. Lloyd's allegations against Sgt. Forham and Lt. Sheppard are in the body of the Complaint, but he did not list them as Defendants in the caption of his Complaint. ECF No. 1.

Instead of doing the assignments given, Lloyd went into Mr. Younger's office and stated he was going to refuse to do the assignments since it was not his job and it would cause him to be out-of-bounds. *Id.* at Ex. 3, pp. 2 – 3. Younger responded that Lloyd should take the rest of the day off to adjust his attitude and that if he continued to disregard Ms. Tischer's instructions he would be fired. *Id.* at p. 10 and Ex. 4.

With respect to lifting furniture, Defendant Tischer states that tutors are asked on occasion to help re-arrange the classroom to set it up for another group that uses the building for meetings. Ms. Tischer told the tutors to lift the desks and chairs instead of dragging them in order to avoid scratching the floor. *Id.* at Ex. 1 and Ex. 2. On April 21, 2011, Lloyd advised Ms. Tischer of his hernia operation and that he could not do any lifting. Ms. Tischer then told Lloyd not lift anything. *Id.* at Ex. 1 and Ex. 3.

After Lloyd's attitude failed to improve, Younger asked Case Management to remove him from his classroom aide assignment on April 28, 2011. *Id.* at Ex. 3, p. 10 and Ex. 4. On April 22, 2011, Lloyd filed an ARP against Younger and Tischer alleging discrimination and harassment. *Id.* at Ex. 3, pp. 2 – 3. The ARP was dismissed by the Warden on May 18, 2011, who found no evidence of discrimination and that Lloyd had been removed from his job for failing to comply with the requests of his supervisor. *Id.* at p. 4. Lloyd's appeal to the Commissioner of Correction resulted in another dismissal because there was no evidence of discrimination and the decision by Case Management to remove him from a job assignment was not reviewable. *Id.* at pp. 5 – 8.

### Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009); *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## Analysis

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison

system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976), see also *Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). Lloyd did not have a protected liberty interest in keeping his prison job; however, removal from his job in retaliation for the exercise of protected rights is prohibited.

In order to prevail on a claim of retaliation, Lloyd "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. Compare *Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, Md. 999 F.2d 780, 785 (4th Cir. 1993).

To make out a prima facie case of retaliation, Lloyd has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of Defendants. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). In the prison context, it must be established that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir.1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id.* at 532. After Lloyd makes a prima facie showing, the burden shifts to Defendants to demonstrate that they would have reached the same decision even in the absence of the plaintiff's constitutionally protected conduct. *Mt. Healthy*, 429 U.S. at 287.

Construing the Complaint liberally and taking as true the allegations asserted, Lloyd has failed to make out prima facie case of retaliation. Even assuming Lloyd was asked to do something he was not permitted to do (wash the outside of the windows), his removal from the job was premised on his insubordination. There is nothing to suggest that Lloyd was removed from his prison job because of his race or his age or because he filed an ARP. Plaintiff "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). Here there is no evidence that Lloyd's filing of an ARP was the motivating factor in the decision to remove him from his job. Rather, the weight of the evidence indicates he was removed from his job for insubordinate behavior.

Indeed, his Complaint is evidence of his insubordinate behavior when he asserts that emptying the trash is not his job as a tutor. ECF No. 1 and 27.

Additionally there is no evidence, other than Lloyd's bald allegations, that any of the decisions regarding his transfer to different prisons, dismissals of his ARPs, or any other actions he did not agree with were retaliatory in nature. Lloyd himself requested transfer to another prison as part of the relief sought in his Complaint and his ARP regarding removal from his job was dismissed because there was no evidence of discrimination as he alleged. ECF No. 1. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994). The Constitution does not guarantee that every decision made in the context of managing a prison will be one with which each prisoner finds agreeable. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995) (not the province of this court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given its due deference).

Lloyd takes issue with the dismissal of Defendants he named in the caption of his Complaint as "Maryland Department of Corrections" and states this Court acted improperly by not maintaining it as a Defendant in the case. ECF No. 27. This Court is empowered to sua sponte dismiss claims which do not state a claim upon which relief may be granted. *See* 28 U.S.C. §1915A; 28 U.S.C. §1915(e) and (g). The Maryland Department of Corrections is not a person within the meaning of 42 U.S.C. §1983[2] and thus is not proper Defendant. Even if Lloyd had named a proper Defendant with respect to his claims regarding dismissal of his ARPs,

---

[2] The statute provides, in relevant part, that "[e]very *person* who, under color of any . . .[law] subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable . . . ."

assignment to a less desirable housing unit, or denial of cataract surgery in retaliation for this lawsuit, his claims would fail. Lloyd fails to establish any evidence of discriminatory or retaliatory animus with respect to the dismissal of his ARPs; each was investigated and dismissed on the merits. Lloyd does not have a right to be housed in one area of the prison versus another, thus his claim that he was improperly placed in a housing unit that was not of his choosing without any evidence of actual harm befalling him as a result is a frivolous claim. *See Sandin*, 515 U.S. 472 (1995) (requiring atypical and significant hardship). Finally, Lloyd's retaliation claim regarding the surgery is wholly conclusory and, therefore, subject to dismissal. *See Gill*, 824 F.2d at 194.

Defendants are entitled to summary judgment in their favor. A separate Order follows.

April 24, 2012
Date

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE